IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

WILLIAMSON+COMPANY, LLC, etc.,  )
                                )
            Plaintiff,          )
                                )
    v.                          )   No. 09 C 2631
                                )
AML & ASSOCIATES, INC., et al., )
                                )
            Defendants.         )

## MEMORANDUM OPINION AND ORDER

Williamson+Company, LLC ("Williamson") has reacted to the issuance of this Court's August 3, 2009 memorandum opinion and order ("Opinion") by filing a Second Amended Complaint ("SAC"), which has in turn triggered a motion by Residential Title Service, Inc. ("Residential") to dismiss Counts I, II and III of that SAC. As this memorandum opinion and order will reflect, Williamson's filing has provided a striking example of the law of unintended consequences.

Under the federal system--or, for that matter, in all courts--filings are expected to set out claims based on the factual scenario as between the litigants--<u>not</u> to reshape the facts to fit how the parties may have been educated as to the law based on earlier developments in the case. For that purpose counsel have a responsibility, inherent in their being licensed to practice law as well as having been memorialized in Fed. R. Civ. P. ("Rule") 11(b)(and in a sense in 28 U.S.C. §1927) to act as something other than servants or handmaidens to carry out

their clients' wishes.

In this instance this Court concluded the Opinion by ordering Residential to answer the then-existing Amended Complaint except for its Count IV fraud claim, which Williamson had to sharpen up. Instead Williamson's counsel has provided a moving target by filing the SAC, which has deleted the fraud claim against Residential entirely[1] and has made material changes in Williamson's other claims. And the unintended consequence of that filing is that the SAC's changes are so fundamental as to undercut the Opinion's earlier ruling that could have preserved Williamson's ability to pursue Residential because Williamson had not engaged in a definitive election of remedies.

Why is that so? Because, having succeeded in obtaining an order of default against AML for its breach of the contract--the Release Agreement--that also contained the total release of Residential that is currently in dispute, Williamson's counsel now alleges on its behalf in SAC ¶22 that "the Release Agreement was rendered void for lack of consideration" because AML had not carried out its end of the bargain.

But that shift of position, which attempts to change the facts to fit the law, runs directly afoul of the well-established

---

[1] Incidentally, that deletion raises a question as to whether the objective good faith required by Rule 11(b) was present to have justified advancing that claim of fraud on Residential's part (as contrasted with a like claim against codefendant AML & Associates, Inc. ("AML")) to begin with.

"mend the hold" doctrine--a principle (1) that this Court first became familiar with early in its practice of law, based on the exemplification of that doctrine in the then-recent decision in Larson v. Johnson, 1 Ill.App.2d 36, 116 N.E.2d 187 (1st Dist. 1953), (2) that this Court then had occasion to invoke from time to time during its time in practice and (3) that this Court has since applied on a number of occasions after attaining the bench. Nor is this Court an outlier in its invocation of the "mend the hold" principle, for our Court of Appeals has done so as well with some frequency.

Thus over two decades ago First Commodity Traders, Inc. v. Heinold Commodities, Inc., 766 F.2d 1007, 1012 (7th Cir. 1985) also "treated Larson as an authoritative exposition of Illinois law" (Harbor Ins. Co. v. Continental Bank Corp., 922 F.2d 357, 363 (7th Cir. 1990)) and analyzed that dispute in "mend the hold" terms. Indeed, Larson, First Commodity Traders and Harbor Ins. all quoted this earlier statement of the principle by the highest of authorities in Railway Co. v. McCarthy, 96 U.S. 258, 267-68 (1877):

> Where a party gives a reason for his conduct and decision touching any thing involved in a controversy, he cannot, after litigation has begun, change his ground, and put his conduct upon another and a different consideration. He is not permitted thus to mend his hold.

In Harbor Ins. Judge Richard Posner spoke for our Court of Appeals in setting out a particularly extensive exposition of the

3

"mend the hold" doctrine and its honorable antecedents. And lest it be thought mistakenly that the doctrine has not retained its vigor as an active player in the law of contracts, a quick resort to Westlaw finds, for example, Judge Posner repeating the concept for our Court of Appeals as a matter of Indiana law in his 2004 opinion in Utica Mut. Ins. Co. v. Vigo Coal Co., 393 F.3d 707, 716 (7th Cir. 2004) and then Judge Daniel Manion doing the same last year in RLI Ins. Co. v. Conseco, Inc., 543 F.3d 384, 392 n.2 (7th Cir. 2008).

In summary, Williamson cannot mend its hold by now asserting that the Release Agreement, on the strength of which it both sued AML and then obtained an order of default against it, is now functus officio--void for lack of consideration. Williamson cannot thus reverse its field because it apparently suspects that it may not be able to recover as against the defaulted AML.

What has been said here obviates any need for this Court to address Residential's attack on the new SAC. Instead the terms of the July 20, 2007 Release Agreement, pursuant to which Williamson (1) agreed to look to AML alone for repayment of the $400,000 that the latter had obtained improperly and (2) concomitantly released Residential in the following Paragraph 2 of that document,[2] entitle Residential to a

---

[2] For convenience in both reading and understanding its terms, the quotation that follows in the text has replaced the Release Agreement's alphabet-soup designation of the parties with

4

dismissal:

> [Williamson] hereby fully releases, acquits and forever discharges [Residential] and [Residential's] successors, assignees and all other persons, entities, firms, or corporations or related persons or entities who are or might be liable for any and all known or unknown action(s) or inaction(s) by [Residential] or its employees, representative, agents or related persons or entities resulting in any known or unknown damage, claim, demand cost or cause of action.

Accordingly both the SAC and this action are indeed dismissed as to Residential. Because that dismissal is not a final order as to all of Williamson's claims and as to all of the parties (Williamson still does retain the right to pursue AML in an effort to recoup its losses), this Court directs the entry of a final judgment solely as to Residential and expressly determines, as provided in Rule 54(b), that there is no just reason for delay in the entry of that final judgment. Finally, the status hearing previously set for 9 a.m. October 27, 2009 remains in effect (but only as between Williamson and AML).

_____
Milton I. Shadur
Senior United States District Judge

Date: August 21, 2009

---

the names that have been used in this opinion.